IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| NORTH AMERICAN COMMUNICATIONS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 3:17-157 JUDGE KIM R. GIBSON |
|---|---|---|
| Plaintiff, | | |
| v. | | |
| MICHAEL HERMAN, | | |
| Defendant. | | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is Defendant Michael Herman's Motion to Dismiss the Amended Complaint under Rule 12(b)(3) and Motion to Strike under Rule 12(f) (ECF No. 15). The motions have been fully briefed (*see* ECF Nos. 16, 23, 24) and are ripe for disposition. For the reasons that follow, the Court will deny Herman's motions.

### II. Jurisdiction

The Court has subject-matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania.

### III. Background

#### A. Factual Background[1]

This case arises from Plaintiff Michael Herman's retirement agreement with Defendant North American Communications, Inc. ("NAC"). NAC, located in Duncansville, Pennsylvania, is "the nation's largest vertically integrated direct mail and fulfillment company" and provides "direct mail services" such as envelopes, printing, bindery, and mailing. (ECF No. 12 at ¶ 7.) Before retiring from NAC, Herman owned fifty percent of NAC's stock, served on NAC's board of directors, and was an officer of NAC. (ECF No. 12 at ¶ 9.)

On June 21, 2013, Herman executed a retirement agreement with NAC. (*Id.* at ¶ 13.) Herman negotiated the agreement in Pennsylvania, including at his attorney's office in Philadelphia. (*Id.* at ¶ 12.) Under the agreement, NAC must pay Herman $130,000 per year for 10 years, subject to certain conditions specified in the agreement. (*Id.* at ¶ 15.)

Two of those conditions are at issue in this case: the non-compete clause and the non-solicitation clause. The non-compete clause provides that Herman "shall not . . . directly or indirectly . . . engage in, or own, manage, operate or control, or participate in the ownership, management, operation, or control of, any entity that engages in any business activity that [NAC] or any of its Affiliates has conducted . . .". (*Id.* at ¶ 19.) The non-solicitation clause provides that Herman "shall not, directly or indirectly, on his own behalf or on behalf of any other person, firm, partnership, corporation, or other entity, contact, solicit, employ, interfere with, attempt to entice away from [NAC] or any of its Affiliates, any individual" who is

---

[1] The facts contained in this section are derived from NAC's Amended Complaint (ECF No. 12), unless otherwise indicated. The Court considers these facts as true for the sole purpose of deciding the pending motions.

2

employed by NAC or has been employed by NAC within 3 months of any solicitation. (*Id.* at ¶ 20.) The non-compete clause and the non-solicitation clause remain in force until the third anniversary of the last installment Herman receives under the agreement.[2] (*Id.* at ¶ 19.)

The retirement agreement contains a forum selection clause which provides that the United States District Court for the Middle District of Pennsylvania shall have "exclusiv[e]" jurisdiction over "any controversy, dispute, or claim arising out of or relating to" the agreement. (ECF No. 12-1 at 5.)

In 2016, Herman and two other partners founded IFM.US, LLC ("IFM"), a Delaware corporation with its principal place of business in New Jersey. (*Id.* at ¶ 26.) IFM is a direct mail and fulfillment company that "competes with NAC." (*Id.* at ¶ 25.) Herman serves as IFM's CEO.[3] (*Id.* at ¶ 30.) Herman invested $15,000 cash in IFM to finance IFM's purchase of a printer and to cover IFM's payroll expenses. (*Id.*) Herman also represented IFM in visits to Fry Communications on at least three occasions in 2016 and conducted business on behalf of IFM using an IFM email account. (*Id.*)

Herman "utilized the services of his former secretary at NAC, Susan Bender, in connection with his participation in IFM." (*Id.* at ¶ 32.) At Herman's request, Bender—a NAC employee—corresponded with IFM's counsel, submitted an invoice to IFM for Herman's travel expenses incurred during his business trips to Fry Communications, and transferred Herman's

---

[2] Since 2015, Herman's severance agreement has been subject to a subordination agreement between Herman, NAC, and Alostar Bank, but the subordination agreement does not alter any of the rights or obligations owed under the severance agreement. (*Id.* at ¶¶ 22-23.)

[3] The Court notes that Herman filed an affidavit by Manny Ortiz, who states that he is in charge of the day-to-day operations of IFM and who attests that Herman is neither IFM's CEO nor manages, controls, or operates IFM's daily operations. (*See* ECF No 16-2 at 2.)

3

$15,000 investment to IFM's bank account. (*Id.* at ¶ 33.) Ms. Bender performed these actions in the Western District of Pennsylvania, where she lives and works. (*Id.* at ¶ 34.)

On February 9, 2017, Herman emailed Ms. Bender and offered her a job at IFM. (*Id.* at ¶ 37.) Herman followed up his email with a telephone call. (*Id.* at ¶ 40.) Ms. Herman was in the Western District of Pennsylvania when she received Herman's email and telephone call. (*Id.*)

Herman successfully persuaded his son, Michael R. Herman, to resign from NAC and work for Herman at IFM. (*Id.* at ¶¶ 42-48.) Herman spoke with Michael about leaving NAC during in-person conversations at a house that Herman owns located in Hollidaysburg, Pennsylvania.[4] (*Id.* at ¶ 45.) On April 6, 2017, Michael resigned from IFM, effective April 13, 2017. (*Id.* at ¶ 47.) IFM subsequently hired Michael who, by May 2017, conducted business on IFM's behalf using an IFM email account. (*Id.* at ¶ 49.)

### B. Procedural Background

On August 29, 2017, NAC filed its Complaint against Herman before this Court. (ECF No. 1.) NAC filed an Amended Complaint on November 20, 2017. (ECF No. 12.) NAC asks that this Court enter a declaratory judgment that Herman breached the retirement agreement and that, as a result of Herman's breach, NAC is released from any future payment obligations to Herman. (*Id.* at 1.)

---

[4] The Court notes that for the last several years, Hyman has resided in San Diego, California. (ECF No. 16-1 at 2.) There is no indication that Herman intends to move back to Hollidaysburg. Accordingly, the fact that Herman maintains a home in Hollidaysburg does not defeat diversity of citizenship because Herman is domiciled in San Diego, California. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) (explaining that "[a] party's citizenship is determined by her domicile" and explaining that "the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.") (internal citations and quotation marks omitted).

4

After NAC filed this case, Herman sued NAC in the Southern District of California for breach of contract. (See ECF No. 16-3.) In that action, Herman alleges that NAC failed to pay Herman the money he is owed under the same retirement agreement that NAC alleges that Herman breached in the action before this Court. (ECF No. 24 at 16.)

## IV. Legal Standard

### A. Venue

"In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Section 1406 "applies where the original venue is improper and provides for either transfer or dismissal of the case."[5] *Id.* Section 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." *Id.* "The party moving for dismissal or transfer based upon improper venue bears the burden of proof." *Rabner v. Titelman*, No. 15-1313, 2016 WL 1613444, at *4 (W.D. Pa. Apr. 22, 2016) (*citing Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) and *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005)); *Wozniak v. Johnston*, No. CIV.A. 09-238, 2009 WL 1307459, at *2 (W.D. Pa. May 8, 2009) (same).

Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .". "[I]n determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction" under § 1391(b)(2), "[t]he test ... is not the defendant's contacts with a particular

---

[5] The Third Circuit has stated that "[t]ransfer in lieu of dismissal is generally appropriate to avoid penalizing plaintiffs by 'time-consuming and justice-defeating technicalities.'" *Bockman*, 459 F. App'x at 162 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (internal quotation marks omitted)).

5

district, but rather the location of those events or omissions giving rise to the claim."[6] *Bockman*, 459 F. App'x at 161 (quoting *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (internal quotation marks omitted)). "[I]n assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Prominent GmbH v. Prominent Sys., Inc.*, No. 2:16-CV-01609, 2017 WL 1316362, at *18 (W.D. Pa. Apr. 10, 2017) (quoting *Cottman Transmission Sys.*, 36 F.3d at 295); *see Lorven Techs., Inc. v. Insight Techs., Inc.*, No. CV167397FLWDEA, 2017 WL 2670971, at *3 (D.N.J. June 21, 2017).

In deciding a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the Court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendant['s] affidavits."[7] *Bockman*, 459 F. App'x at 158 (internal citations omitted); *see Rabner*, 2016 WL 1613444, at *4 (articulating standard for deciding a motion to dismiss for improper venue). But "[e]ven if it examines facts outside the complaint to determine venue, the court . . . must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." *Manning v. Flannery*, No. CIV.A. 09-03190, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010) (citing *ProModel*, 2007 WL 4124502, at *1); *Lanard & Axilbund, LLC v. Wolf*, No. CIV.A. 14-0234, 2014 WL 4722702, at *2 (E.D. Pa. Sept. 23, 2014) (where "Defendants . . . have exercised their option to submit an affidavit in support of their motion [to

---

[6] The Third Circuit has explained that "the venue provision 'favors the defendant . . . by requiring that the events or omissions supporting a claim be substantial'" because "'[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.'" *Bockman*, 459 F. App'x at 161 (quoting *Martino*, 36 F.3d at 295).

[7] Indeed, parties "may submit supporting affidavits" to advance their arguments regarding whether venue is proper. *See, e.g., ProModel Corp. v. Story*, No. CIV. 07-3735, 2007 WL 4124502, at *1 (E.D. Pa. Nov. 19, 2007).

6

dismiss for improper venue], and Plaintiff has responded in kind . . . [the Court is] bound to accept uncontradicted allegations in the complaint as true, and to resolve and construe disputed facts in favor of the Plaintiff.") (internal citations omitted). Both Herman and NAC submitted affidavits in support of their positions, and the Court has taken their affidavits into consideration in accordance with the legal standards outlined above.

B.   **Transfer of Venue**

Even if venue is proper, the Court may still transfer the case in "the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When "ruling on a motion under § 1404(a), the court is free to consider 'all relevant factors,' and the Third Circuit directs district courts to a list of certain private and public interest factors." *Lannett Co. v. Asherman*, No. CIV.A. 13-2006, 2014 WL 716699, at *6 (E.D. Pa. Feb. 24, 2014) (quoting *Jumara*, 55 F.3d at 879 (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: § 3848 (2d ed.1986))).

"The private factors include (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of the books and records." *Crayola, LLC v. Buckley*, 179 F. Supp. 3d 473, 480 (E.D. Pa. 2016) (citing *Jumara*, 55 F.3d at 879).

"The public factors include (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in

7

deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Crayola*, 179 F. Supp. 3d at 480 (citing *Jumara*, 55 F.3d at 879-90).[8]

"'The above list of factors is merely a guide, and not all the factors may be relevant or determinative in each case.'" *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV. A. 09-290, 2009 WL 3055300, at *2 (W.D. Pa. Sept. 21, 2009) (quoting *LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F.Supp.2d 574, 587 (D.N.J., 2001)).

## V. Discussion: Motion to Dismiss

### A. The Court Will Deny Herman's Motion to Dismiss Because Venue is Proper in the Western District of Pennsylvania

Herman contends that NAC's allegations are insufficient to establish venue in the Western District of Pennsylvania. (ECF No. 16 at 10-11.) Specifically, Herman argues that merely having email and telephone communications with Ms. Bender and Michael Herman do not render venue proper in this district. (*Id.*)

In response, NAC asserts that venue is proper in the Western District of Pennsylvania because NAC has alleged that Herman solicited Ms. Bender and Michael Herman while they were present in the district, and because Herman utilized Ms. Bender's services while she was working for NAC within the district. (ECF No. 24 at 8-13.)

---

[8] *See, e.g., Am. Envtl. Servs., Inc. v. Metalworking Lubricants Co.*, 634 F. Supp. 2d 568, 574 (W.D. Pa. 2009) (listing private and public factors); *Conroy v. Pennsylvania Tpk. Comm'n*, No. CIV.A. 10-1234, 2011 WL 578779, at *1 (W.D. Pa. Jan. 19, 2011) (same); *Klingensmith v. Paradise Shops, Inc.*, No. CIV.A. 07-322, 2007 WL 2071677, at *2 (W.D. Pa. July 17, 2007) (same); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV. A. 09-290, 2009 WL 3055300, at *1 (W.D. Pa. Sept. 21, 2009).

8

"'In determining proper venue for a contractual dispute, the primary factors to be considered are 'where the contract was to be negotiated or executed, where the contract was to be performed, and where the alleged breach occurred.'" *Wall v. Corona Capital, LLC*, 221 F. Supp. 3d 652, 657–58 (W.D. Pa. 2016) (quoting *Whipstock Natural Gas Services, LLC v. Trans Energy, Inc.*, No. 08–1084, 2008 WL 4287158 at *3 (W.D. Pa. Sept. 17, 2008) (internal citations omitted); *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 440 (D.N.J. 2015) (stating same factors); *Stalwart Capital, LLC v. Warren St. Partners, LLC*, No. CIV. 11-5249 JLL, 2012 WL 1533637, at *4 (D.N.J. Apr. 30, 2012) (same); *Leone v. Cataldo*, 574 F. Supp. 2d 471, 484 (E.D. Pa. 2008) (same).

The Court finds that venue is proper in the Western District of Pennsylvania. This is a breach of contract dispute. NAC alleges that Herman violated the terms of his retirement agreement by, among other things, soliciting NAC employees to work for him at IFM. These alleged breaches occurred in the Western District of Pennsylvania.

Specifically, NAC alleges that Herman solicited Ms. Bender while she was working for NAC in Duncansville (ECF No. 12 at ¶ 38), which is within this judicial district. Furthermore, Ms. Bender affirms in an affidavit that she was at work in Duncansville when she (1) received, read, and responded to Herman's email asking her to work for IFM and (2) spoke to Herman by phone about her working for IFM.[9] (ECF No. 24-1 at ¶¶ 8-10.) NAC also alleges that Herman

---

[9] The Court notes that Herman filed his own affidavit in which he affirms that he "never solicited Ms. Bender to become an employee of IFM." (ECF No 16-1 at ¶ 8.) NAC filed a competing affidavit in which Ms. Bender affirms that Herman asked her to work for Herman and his business partner, Manny Ortiz, at IFM. (ECF No. 24-1.) Ms. Bender states that Herman offered her employment at IFM via email on February 9, 2017, and via a follow-up phone call later that day. (*Id.*) NAC also filed a copy of the email exchange between Herman and Ms. Bender. (ECF No. 24-1 at 5-6.) At this stage, the Court accepts NAC's

9

interfered with NAC by utilizing the services of Ms. Bender after Herman retired, and that Ms. Bender performed these services within this judicial district. (ECF No. 12 at ¶¶ 33-34.) Additionally, Herman admits in his affidavit that he and his son Michael Herman had "a few" discussions about leaving NAC to work at IFM while father and son were visiting the family home in Hollidaysburg, Pennsylvania. (ECF No. 16-1 at 2.) Hollidaysburg is also within this judicial district. Because this is a breach of contract dispute and because NAC alleges that Herman solicited NAC employees in violation of his retirement agreement within the Western District of Pennsylvania, the Court easily finds that venue is proper in this district.

To support his argument that venue is improper in the Western District of Pennsylvania, Herman emphasizes the alleged breach of the non-compete clause rather than the alleged breaches of the non-solicitation clause. (*See, generally*, ECF No. 16 at 9-13.) Herman has a point — IFM is a Delaware corporation with its principal place of business in New Jersey, and the Amended Complaint's only allegations pertaining to this judicial district are NAC's claims that Herman solicited NAC employees while they were present in this district. But Herman ignores the fact that the solicitation allegations, if proven, are themselves sufficient to establish breach under the contract's non-solicitation clause.[10] Therefore, venue is proper in this district regardless of where the activities took place that allegedly violated the non-compete provision.

---

version of events because it must "resolve all factual conflicts in the plaintiff's favor." *Manning*, 2010 WL 55295, at *4.

[10] The Court observes that "in cases with multiple claims, the court must determine whether venue is proper for each claim." *Lorven*, 2017 WL 2670971, at *3 (internal citations omitted). In this case there is only one claim — breach of contract. While NAC asserts several factual bases for Herman's alleged breach, such as Herman's soliciting Michael Herman and Ms. Bender in violation of the non-solicitation clause and Herman's founding IFM in violation of the non-compete clause, NAC only asserts one claim against Herman. Because NAC alleges that the violations of the non-solicitation agreement occurred in the

10

The cases that Herman cites to argue that venue is improper in this district are inapposite. For instance, in *CLP Packaging Sols., Inc. v. Sports Pouch Beverage Co.*, No. CIV.A. 07-1532 (SDW), 2008 WL 2095774, at *3 (D.N.J. May 16, 2008), the district court found venue lacking in New Jersey when there were "no in person meetings" there.[11] Here, Herman admits that he spoke with his son about leaving NAC to work at IFM while both men were present within this district. Herman contends that he was merely giving "fatherly advice" (ECF No. 16-1 at 2), but Herman has not pointed to any clause in the retirement agreement that excepts "fatherly conversations" from the contract's non-solicitation provision.

In conclusion, the Court finds that venue is proper in the Western District of Pennsylvania. Accordingly, the Court will deny Herman's motion to dismiss based on improper venue.

## VI. Discussion: Motion to Transfer

The Court will now consider Herman's motion to transfer venue. As venue is proper in several districts, the Court will consider each potential district in turn using the various private and public interest factors articulated by the Third Circuit in *Jumara*.

---

Western District of Pennsylvania, venue is proper in this judicial district, notwithstanding the fact that the alleged violations of the non-compete did not occur here.

[11] The Court notes that *Stalwart Capital, LLC v. Warren St. Partners*, LLC, No. CIV. 11-5249 JLL, 2012 WL 1533637, at *5 (D.N.J. Apr. 30, 2012) is similarly inapposite. In that breach of contract case, the district court found venue lacking in New Jersey because the breach and the only in-person negotiation took place in Virginia, not New Jersey. As discussed above, the alleged breaches here case occurred in several judicial districts, one of which is the Western District of Pennsylvania.

11

A.  **The Court Will Not Transfer this Case to the Southern District of California Because the Private and Public Factors Weigh Against Transfer**

Herman next asks this Court to transfer this case to the Southern District of California. (ECF No. 16 at 13-14.) To support his argument, Herman argues that this case could have originally been brought in the Southern District of California because that is the judicial district in which Herman resides. (*Id.* at 13.) Herman also argues that transferring to the Southern District of California would serve the interests of justice because that district is where Herman's breach of contract case against NAC is pending. (*Id.*)

In response, NAC argues that Herman has failed to satisfy his burden to establish that a transfer of venue is proper. (ECF No. 24 at 13-15.) NAC emphasizes that the events giving rise to the lawsuit occurred in this district, not in the Southern District of California. (*Id.* at 13-14.) NAC asserts that the private and public interest factors weight against transfer, and contends that because Herman keeps a house within this district, this district is more convenient for the parties and witnesses. (*Id.* at 14-15.)

Defendant has not met his burden to establish that transfer to the Southern District of California serves the interests of justice. The only private factor that supports transfer to the Southern District of California is defendant's forum preference. *See Jumara*, 55 F.3d at 879. Four of the private factors weigh against transfer: (1) plaintiff's forum preference, as NAC sued Herman in this district; (2) whether the claim arose elsewhere, because the alleged solicitations occurred in this district and the alleged breaches of the non-compete clause occurred in the Eastern District of Pennsylvania, Delaware, and New Jersey; (3) the convenience of the parties, because NAC's principal place of business is within this district and Herman maintains a house

12

here; and (4) the convenience of the witnesses, as Ms. Bender and other NAC employees reside in this district. *Id.* The final private factor (location of books and records) is neutral. Given that four of five applicable private factors weigh against transfer, the Court easily finds that Herman has failed to meet his burden.

The public factors similarly fail to support transfer to the Southern District of California. The only public factor that might favor transfer to that district is "practical considerations that could make trial easy, expeditious, or inexpensive," and only because Herman responded to NAC's suit before this Court by suing NAC for breach of contract in the Southern District of California. However, at the time the parties filed their briefs before this Court, NAC's motion to dismiss or transfer Herman's action was pending before the Southern District of California. (*See* ECF No. 24 at 8.) If the Southern District of California dismissed or transferred Herman's case against NAC, the only public factor weighing towards transfer from this district would be eliminated.

In conclusion, the Court finds that Herman has failed to meet his burden to establish that transferring this case to the Southern District of California would serve the interests of justice. Accordingly, the Court will deny Herman's motion to transfer the case to the Southern District of California.

**B.    The Court Will Not Transfer this Case to the Middle District of Pennsylvania Because the Parties Have Waived Their Rights to Enforce the Forum-Selection Clause and Because the Private and Public Interests Weigh Against Transfer**

Herman next asks this Court to transfer the case to the Middle District of Pennsylvania pursuant to the forum-selection clause in the retirement agreement. (ECF No. 16 at 14-15.) In

response, NAC contends that Herman waived his right to enforce the forum-selection clause by filing his suit against NAC in the Southern District of California. (ECF No. 24 at 16-17.)

"[V]enue objections are waivable, even when premised on a forum-selection clause . . .". *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 407 (3d Cir. 2017). *See MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 375 (W.D. Pa. 2012) (observing that "[w]hen a party chooses to file suit upon a contract in an unauthorized venue in direct contravention to the contract's forum selection clause, it is not surprising that courts would infer the party's abandonment of its rights under the forum selection provision.").

The Court finds that both parties waived their ability to enforce the forum-selection clause. Herman's retirement contract provided for exclusive jurisdiction in the Middle District of Pennsylvania. (ECF No. 12-1 at 5.) Herman waived the right to enforce the forum-selection clause when he sued NAC in the Southern District of California. NAC waived its ability to enforce the forum-selection clause when it filed its case before this Court. Therefore, both parties waived their ability to enforce the forum-selection clause's provision providing for exclusive jurisdiction in the Middle District of Pennsylvania.

Herman simultaneously argues (1) that this Court should find that NAC waived its ability to enforce the forum-selection clause by suing Herman in the Western District of Pennsylvania and (2) that, in the alternative to outright dismissal or transfer to the Southern District of California, this Court should transfer this case to the Middle District of Pennsylvania under the forum-selection clause. However, Herman fails to appreciate the fact that, under his

argument, he has also waived his ability to enforce the forum-selection clause because he filed his case against NAC in the Southern District of California.

Even though both parties waived their ability to enforce the forum-selection clause, the Court could still transfer the case to the Middle District if it could have originally been filed there and if transfer serves the interests of justice. 28 U.S.C. § 1404(a). The Court finds that venue is proper in the Middle District because "a substantial part of the events or omissions giving rise to the claim occurred" there, 28 U.S.C. § 1391(b)(2); NAC alleges that Herman violated the non-compete provision by traveling to Frye Communications on behalf of IFM on three occasions (ECF No. 12 at 6), and it appears from Herman's briefing that Frye is located in the Middle District of Pennsylvania. (ECF No. 16 at 10.) Accordingly, venue is proper in the Middle District and this Court can transfer the case there if it is in the interest of justice.

The Court finds that it would not be in the interest of justice to transfer this case to the Middle District of Pennsylvania. Three of the private interest factors strongly weigh against transfer; (1) the plaintiff's forum preference, as NAC sued in the Western District of Pennsylvania; (2) convenience of the parties, because Herman has a house in the Western District and NAC's principal place of business is within the Western District; and (3) the convenience of the witnesses, because Ms. Bender and the other NAC employees are located in the Western District. The only private favor that clearly favors transfer is "defendant's preference," but the importance of this factor is reduced by the fact that the Middle District of Pennsylvania is Herman's second choice of venue after the Southern District of California. "Whether the claim arose elsewhere" is neutral because, as discussed *supra*, Herman allegedly

committed acts that constituted breach in several districts. The final private factor, "location of the books and records," is inapplicable. Thus, three of the six private factors strongly weigh towards transfer. One weighs slightly towards transfer. And the other two are neutral.

Additionally, the Court finds that none of the six public factors weigh towards transfer to the Middle District.[12]

Because the Court finds that the private and public factors weigh strongly against transfer to the Middle District, transferring the case to the Middle District would not serve the interests of justice. 28 U.S.C. § 1404(a). Accordingly, the Court will deny Herman's motion to transfer the case to the Middle District of Pennsylvania.

### C. The Court Will Not Transfer this Case to Other Potential Districts[13]

The Court notes that venue appears to be proper in at least three other judicial districts: (1) the Eastern District of Pennsylvania (where Herman allegedly negotiated the retirement agreement) (ECF No. 12 at ¶ 12)); (2) the District of Delaware (under whose laws IFM is allegedly organized) (*id.* at ¶ 29); and (3) the District of New Jersey (where IFM allegedly has its principal place of business) (*id* at ¶ 26)). The Court finds that it would not be in the interests of justice to transfer to any of these districts because none of the parties are located in any of these

---

[12] As noted above, the public interest factors are:
(1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Crayola*, 179 F. Supp. 3d at 480 (*citing Jumara*, 55 F.3d at 879-90).

[13] Herman has not asked the Court to transfer the case to any of these districts and neither side has briefed whether the case should be transferred to these districts.

16

districts. Accordingly, the Court will not transfer the case to any of these districts. 28 U.S.C. § 1404(a).

### D. Conclusion: The Court Will Deny Herman's Motion to Transfer Because Transferring the Case Would Not Serve the Interests of Justice

Venue is proper in the Western District of Pennsylvania. Moreover, transferring to the other districts in which venue is proper would not serve the interests of justice. Accordingly, the Court will deny Herman's motion to transfer venue.

## VII. Discussion: Motion to Strike

### A. The Court Will Deny Herman's Motion to Strike

Finally, Herman moves to strike three paragraphs from NAC's Amended Complaint. (*See* ECF No. 16 at 15-17.) Specifically, Herman objects to paragraphs 10, 11, and 14, which allege that Herman left his employment NAC because of an IRS investigation that resulted in Herman pleading guilty to filing a false tax return. (*See* ECF No. 12 at ¶¶ 10, 11, 14.) Herman asserts that the IRS investigation is irrelevant to this breach of contract case. (ECF No. 16 at 15.) In response, NAC argues that these paragraphs contain useful background information that elucidates why Herman left NAC and entered into the retirement agreement.

Under Federal Rule of Civil Procedure 12(f), courts may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Berezansky v. CBN Bank*, Case No. 3:17-cv-105, 2018 WL 461245, at *2 (W.D. Pa. Jan. 17, 2018) (Gibson, J.) (citing *Nelson v. Bender*, No. 3:15-64, 2015 WL 8207490, at *4 (W.D. Pa. Dec. 7, 2015)). The purpose of a motion to strike "is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Hay v. Somerset Area Sch. Dist.*, No. 3:16-CV-229,

17

2017 WL 2829700, at *3 (W.D. Pa. June 29, 2017) (Gibson, J.) (quoting *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 443 (W.D. Pa. 2010)); *see also Brugh v. Mount Aloysius College*, Case No. 3:17-cv-71, 2017 WL 5634984, at *9 (W.D. Pa. Nov. 21, 2017) (Gibson, J.).

Motions to strike "'are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Hay*, 2017 WL 2829700, at *3 (quoting *Tennis*, 730 F. Supp. 2d at 443) (internal citations omitted); *see Bender*, 2015 WL 8207490, at *9 ("The standard for striking under Rule 12(f) is strict and only allegations that are so unrelated to plaintiff's claims as to be unworthy of any consideration should be stricken. Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice.") (quoting *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)) (internal quotations and citations omitted).

The Court will deny Herman's motion to strike. The Court agrees with Herman that the circumstances surrounding Herman's signing the retirement agreement bear little relevance to whether or not Herman breached that agreement. However, the Court agrees with NAC that these paragraphs contain background information that helps contextualize the circumstances surrounding his departure from NAC. Thus, the challenged paragraphs do have a relation to the controversy. Moreover, the Court does not believe that Herman will be prejudiced by paragraphs 10, 11, and 14. This is especially true "in light of the fact that pleadings . . . are not read to jurors." *Lifetouch Nat'l Sch. Studios Inc. v. Roles*, No. 3:15-CV-234, 2016 WL 3440620, at *2 (W.D. Pa. June 20, 2016) (Gibson, J.) (denying motion to strike) (citing *Ratvasky v. Citizens*

18

*National Bank*, 2005 WL 3289343, at *2 (W.D. Pa. Dec. 5, 2005)). Therefore, the Court will deny Herman's motion to strike.

## VIII. Conclusion

The Court will deny Herman's motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) because venue is proper in the Western District of Pennsylvania. The Court will also dismiss Herman's motion to transfer venue because the Court finds that it would not be in the interests of justice to do so. Finally, the Court will deny Herman's motion to strike because the Court finds that the challenged paragraphs have a relation to the controversy and that Herman will not suffer prejudice as a result of their inclusion in the Amended Complaint.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH AMERICAN COMMUNICATIONS, INC., <br> Plaintiff, <br><br> v. <br><br> MICHAEL HERMAN, <br><br> Defendant. | CIVIL ACTION NO. 3:17-157 <br><br> JUDGE KIM R. GIBSON |

## ORDER

NOW, this 25th day of January, 2018, upon consideration of Defendants' Motion to Dismiss the Amended Complaint Under Rule 12(b)(3) and Motion to Strike Under Rule 12(f) (ECF No. 15), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that said Motion is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE