IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NORTH AMERICAN** ) | |
| **COMMUNICATIONS, INC.,** ) | **CIVIL ACTION NO. 3:17-157** |
| **Plaintiff,** ) | |
| ) | **JUDGE KIM R. GIBSON** |
| **v.** ) | |
| ) | |
| **MICHAEL HERMAN,** ) | |
| **Defendant and Third-** ) | |
| **Party Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **NORTH AMERICAN** ) | |
| **COMMUNICATIONS, INC., ROBERT** ) | |
| **HERMAN and NICHOLAS ROBINSON,** ) | |
| **Third-Party Defendants.** ) | |

## MEMORANDUM OPINION

### I.     Introduction

Pending before the Court is the Motion to Dismiss Amended Counterclaims filed by

Third-Party Defendants North American Communications, Inc. ("NAC"), Robert Herman, and

Nicholas Robinson (ECF No. 59). The motion has been fully briefed (*see* ECF Nos. 60, 61) and is

ripe for disposition. For the reasons that follow, the Court will **GRANT in PART and DENY in**

**PART** Third-Party Defendants' motion.

## II. Background

### A. Factual History[1]

Michael Herman founded NAC over forty years ago. (ECF No. 55 at ¶ 8.) Two families jointly owned NAC—the Hermans and the Paltrows. (*Id.* at ¶ 9.) The Hermans' half of NAC was technically owned by a limited partnership. (*Id.* at ¶ 10.) But Michael Herman managed and effectively controlled the partnership. (*Id.*) Michael Herman also received compensation from this entity in the form of dividends. (*Id.* at ¶ 12.)

Michael Herman left NAC in 2013. (*Id.* at ¶ 11.) Michael Herman and NAC entered into a retirement agreement, under which Michael Herman would transfer control and decision-making authority of the limited partnership to his son, Robert Herman, who became the 50% owner of NAC. (*Id.* at ¶ 12.) Michael Herman also gave up his right to receive dividends from the limited partnership. (*Id.*) In exchange for transferring ownership and control to his son, NAC promised to pay Michael Herman a $130,000 retirement benefit each month for ten years. (*Id.* at ¶ 13.)

For the first ten months after Michael Herman retired, NAC paid him the full amount due under the retirement agreement. (*Id.* at ¶ 14.) For the next four months, NAC paid half of its monthly obligation. (*Id.*) And after making partial payments for four months, NAC stopped

---

[1] The Court derives the facts presented in this section from Michael Herman's Amended Counterclaims (ECF No. 55). "Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint." *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011) (McVerry, J.) (citing *United States v. Union Gas Co.*, 743 F. Supp. 1144, 1150 (E.D. Pa. 1990)). Therefore, the Court must accept the allegations in Michael Herman's Amended Counterclaims as true and draw all reasonable inferences in the light most favorable to Michael Herman. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

paying Michael Herman entirely. (*Id.*) Michael Herman has not received a payment from NAC since September 2014. (*Id.*)

When NAC stopped paying Michael Herman, Robert Herman—NAC's president and Michael Herman's son—"represented" to Michael Herman that NAC lacked sufficient funds to make its payments. (*Id.* at ¶ 15.) Robert Herman "repeated the substance of that representation to his father on numerous occasions," and falsely assured Michael Herman that NAC would resume payments once it achieved the requisite financial stability. (*Id.*) Contrary to Robert Herman's representations, NAC never intended to fulfill its obligations to Michael Herman. (*Id.*)

Michael Herman makes three allegations to support his claim that NAC never intended to honor the retirement agreement. First, NAC did not list Michael Herman's retirement benefits as "liabilities" on financial documents. (*Id.*) Second, despite claiming that it lacked the funds to pay the retirement benefits, NAC continued to pay Robert Herman and Nicholas Robinson (NAC's CEO) "exorbitant" compensation that far exceeded market standards; between 2014 and 2017, Robert Herman and Nicholas Robinson paid themselves $6,400,000—approximately $3,600,000 more than the industry standard for executives of comparable companies. (*Id.* at ¶¶ 16, 28.) Third, despite representing to Michael Herman that it lacked sufficient funds to pay his retirement benefits, NAC remained current on payments for bank debt and trade payables. (*Id.* at ¶ 17.) In other words, while NAC claimed it possessed inadequate funds to pay Michael Herman, it simultaneously continued to service its other debts and pay its president and CEO unreasonably high salaries.[2]

_____

[2] During all relevant time periods, Robert Herman and Nicholas Robinson decided whether to pay Michael Herman. (*Id.* at ¶ 25.)

3

Alternatively, Michael Herman claims that Robert Herman and Nicholas Robinson knew that NAC lacked the ability to fulfill its obligations when Michael Herman entered into the retirement agreement. (*Id.* at ¶ 20.) If Michael Herman had known that NAC lacked the ability or the intention to make all of the required retirement payments, Michael Herman would not have entered into the retirement agreement. (*Id.* at ¶ 21.)

### B.    Procedural History

NAC filed a Complaint against Michael Herman (ECF No. 1), which it subsequently amended. (ECF No. 12.) NAC asks that this Court enter a declaratory judgment that Michael Herman breached the retirement agreement by violating its non-compete and non-solicitation clauses and that, as a result of Michael Herman's breach, NAC is released from any future obligations. (*Id.* at 1.)

Michael Herman filed a motion to dismiss for improper venue (ECF No. 15), which this Court denied. (*See* ECF No. 30.)

After this Court denied Michael Herman's motion to dismiss, he filed an answer and counterclaims (ECF No. 35), which he subsequently amended (ECF No. 55). Michael Herman asserts twelve counterclaims: breach of contract against NAC (Count I); in the alternative, quantum meruit/unjust enrichment against NAC (Count II); in the alternative, promissory estoppel against NAC (Count III); fraud in the inducement against all Counterclaim-Defendants (Count IV); negligent misrepresentation against all Counterclaim-Defendants (Count V); fraud, against NAC (Count VI); fraud, against Robert Herman and Nicholas Robinson (Count VII); fraudulent and voidable transfer under 12 Pa. C.S. § 5104, against all Counterclaim-Defendants (Count VIII); fraudulent and voidable transfer under 12 Pa. C.S. § 5105, against all Counterclaim-

4

Defendants (Count IX); conspiracy against Robert Herman and Nicholas Robinson (Count X); unlawful, unfair and fraudulent business practices under the California Business and Professions Code against all Counterclaim-Defendants (Count XI); and declaratory judgment (Count XII). (*See* ECF No. 55.)

Counterclaim-Defendants move to dismiss all of Michael Herman's amended counterclaims, except for breach of contract and declaratory judgment. (*See* ECF No. 59.)

## III.   Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court reviewing the sufficiency of a complaint must take three steps.[3] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the

---

[3] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

5

assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**IV. Discussion**

**A. The Gist of the Action Doctrine Bars Michael Herman's Fraud in the Inducement, Negligent Misrepresentation, and Fraud Claims Against NAC (Counts IV, V, and VI)**

Michael Herman bases his tort claims on the allegation that NAC never intended to honor his retirement agreement. Counterclaim Defendants argue that the gist of the action doctrine bars these claims. (ECF No. 60 at 4-11.) In response, Michael Herman contends that the gist of the action doctrine does not apply because these claims allege violations of duties imposed by society rather than duties imposed by the retirement agreement itself.

Under Pennsylvania's gist of the action doctrine, a party cannot "bring a tort claim for what is, in actuality, a claim for breach of contract." *Bruno v. Erie Insurance Company*, 106 A.3d 48, 60 (Pa. 2014). "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. *Id.* at 68. "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals . . .

6

then it must be regarded as a tort." *Id.; see also Downs v. Andrews*, 639 Fed. Appx. 816 (3d Cir. 2016); *Dommel Prop. LLC v. Jonestown Bank and Trust Co.*, 626 Fed. Appx. 361 (3d Cir. 2015); *Rogers v. Gentex Corp.*, 3:16-cv-137, 2018 WL 1370611 (M.D. Pa. Mar. 16, 2018); *Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421 (Pa. Super. Ct. 2016); *B.G. Balmer & Co. v. Frank Crystal & Company, Inc.*, 148 A.3d 454 (Pa. Super. Ct. 2016); *Munksjo Paper AB v. Bedford Materials Co.*, No. 3:16-CV-270, 2018 WL 1866086, at \*5 (W.D. Pa. Apr. 18, 2018) (Gibson, J.).

Pennsylvania district courts disagree about whether the gist of the action doctrine bars tort claims based on allegations that the promisor lied to the promisee about his or her intention to fulfill his or her contractual obligations. "[V]arious district courts in this Circuit have found fraudulent inducement claims that are 'predicated upon misrepresentations as to a party's intent to perform under a contract' barred by the gist of the action doctrine." *Atl. Holdings, Ltd. v. Apollo Metals, Ltd.*, 263 F. Supp. 3d 526, 531 (E.D. Pa. 2017) (quoting *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 520 (E.D. Pa. 2012)) (dismissing fraudulent inducement claim at motion to dismiss stage); *see, e.g., Malone v. Weiss*, No. CV 17-1694, 2018 WL 827433, at \*4–5 (E.D. Pa. Feb. 12, 2018) (dismissing fraudulent inducement claim at motion to dismiss stage); *Glob. Sourcing LLC v. DBDK Int'l, LLC*, No. CV 17-325, 2018 WL 723098, at \*2 (E.D. Pa. Feb. 5, 2018) (dismissing fraudulent inducement claim at motion to dismiss stage); *Agrotors, Inc. v. Ace Glob. Markets*, No. 1:13-CV-1604, 2014 WL 690623, at \*5 (M.D. Pa. Feb. 24, 2014) (dismissing fraudulent inducement claim at motion to dismiss stage); *Aceros Recicilables de Mexico, S.A. de C.V. v. ELG Haniel Metals Corp.*, No. CIV.A. 02-1935, 2006 WL 1429381, at \*7 (W.D. Pa. Mar. 14, 2006) (Lancaster, J.) (dismissing negligent misrepresentation claim at the summary judgment stage).

Other courts have held that the gist of the action doctrine does not bar these tort claims. These courts conceptualize the misrepresentation about one's intention to perform under the contract as distinct from the breach of the contract itself. *See, e.g., Graham Packaging Co., L.P. v. Transplace Texas, L.P.*, No. 1:15-CV-01186, 2015 WL 8012970, at \*4 (M.D. Pa. Dec. 7, 2015) (holding that gist of the action doctrine does not preclude fraudulent misrepresentation and negligent misrepresentation claims); *H Contractors, LLC v. E.J.H. Constr., Inc.*, No. CV 16-368, 2017 WL 658240, at \*6 (W.D. Pa. Feb. 16, 2017) (denying motion to dismiss fraudulent inducement claim based on gist of the action doctrine); *Morrison v. AccuWeather, Inc.*, No. 4:14-CV-0209, 2015 WL 4357346, at \*6 (M.D. Pa. July 14, 2015) (holding that gist of the action doctrine does not bar fraud in the inducement claim); *Stirone v. McHutchison Inc.*, No. 2:17-CV-1644-JFC, 2018 WL 1256777, at \*5 (W.D. Pa. Mar. 12, 2018).

After careful deliberation, the Court agrees with those district courts that have held that the gist of the action doctrine bars tort claims concerning the promisor's intent to perform under the contract. As one district court aptly noted, "[t]here can be little doubt that a misrepresentation as to a party's intent to perform contractual duties 'concern[s] the performance of contractual duties.'" *Vives*, 849 F. Supp. 2d at 521 (quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (2002)). And as one district court insightfully observed, "[p]ermitting a fraudulent inducement claim [based on the allegation that the defendant never intended to honor the contract] would essentially negate the entire . . . gist of the action doctrine because a [p]laintiff would have only to allege that [d]efendants never intended to abide by a provision in their contract in order to escape dismissal." *Malone*, 2018 WL 827433, at 5.

8

The gist of the action doctrine precludes Michael Herman's fraud, fraudulent inducement, and negligent misrepresentation claims. These claims allege that NAC never intended to honor his retirement agreement. They involve duties imposed by the retirement agreement, not by society. They properly sound in contract, not tort. Therefore, the gist of the action doctrine bars these claims. *Bruno*, 106 A.3d at 60. Accordingly, the Court will dismiss Michael Herman's tort claims against NAC.

## B.    The Gist of the Action Doctrine Bars Michael Herman's Fraud Claim Against Robert Herman and Nicholas Robinson (Count VII)

Michael Herman argues that the gist of the action doctrine does not apply to his claims against Robert Herman and Nicholas Robinson because neither of them signed his retirement contract. (ECF No. 61 at 14.) The Court disagrees.

"As the Pennsylvania courts have spelled out, the gist of the action doctrine bars tort claims against an individual defendant where the contract between the plaintiff and the officer's company created the duties that the individual allegedly breached."[4] *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 387 (3d Cir. 2004) (collecting cases). Since *Williams*, numerous district courts have held that the gist of the action doctrine bars tort claims against non-parties to the contract if the defendants acted merely as agents or employees of the entity that was a party to the contract. *See, e.g, Furniture Sols. & Res. v. Symmetry Office, LLC*, No. CV 15-4774, 2015 WL 9302915, at \*6 (E.D. Pa. Dec. 22, 2015) (holding that the gist of the action doctrine precludes tort claims against agents of corporate defendant because claims arose from corporate defendant's underlying breach of

---

[4] The Court acknowledges that the Third Circuit declined to deem *Williams* as precedential. But the Court still considers *William*'s reasoning "persuasive." *Guy Chem. Co. v. Romaco S.p.A.*, No. CIVA 3:2006-96, 2009 WL 840386, at \*16 (W.D. Pa. Mar. 27, 2009) (Gibson, J.)

9

contract); *Integrated Waste Sols., Inc. v. Goverdhanam*, No. CIV.A. 10-2155, 2010 WL 4910176, at *12 (E.D. Pa. Nov. 30, 2010) (holding that gist of the action doctrine barred plaintiff's fraud, intentional misrepresentation, and negligent misrepresentation claims against individual defendant, who served as CEO of corporate defendant, despite the lack of contractual relationship with the individual defendant, because the CEO's misrepresentations concerned the subject matter of the contract between the plaintiff and the company); *Velocity Int'l, Inc. v. Celerity Healthcare Sols., Inc.*, No. CV 09-102, 2012 WL 12895053, at *2 (W.D. Pa. Nov. 27, 2012) (Conti, J.) (dismissing tortious interference claim against agent of corporate defendant under gist of the action doctrine).

The gist of the action doctrine bars Michael Herman's fraud claim against Robert Herman and Nicholas Robinson. Michael Herman's allegations against Robert Herman and Nicholas Robinson concern their actions as officers and agents of NAC. Further, Michael Herman merely alleges that these Defendants misrepresented NAC's intentions to fulfill its promise to pay him under the retirement agreement. As explained above, these "tort" claims are disguised breach of contract claims arising from NAC's failure to honor Michael Herman's retirement agreement. Therefore, the gist of the action doctrine bars these claims even though Robert Herman and Nicholas Robinson were not parties to the retirement agreement. *Williams*, 93 F. App'x at 387.

## C. Michael Herman Stated Plausible Claims for Unjust Enrichment and Promissory Estoppel (Counts II and III)

### 1. Michael Herman Properly Plead Quasi-Contract Claims in the Alternative to His Breach of Contract Claim

Counterclaim-Defendants argue that the Court should dismiss Michael Herman's quasi-contract claims because Michael Herman and NAC have a valid contract. (*See* ECF No. 60 at 14-

10

16.) In response, Michael Herman argues that alternative pleading permits him to raise quasi-contract claims as alternative theories of recovery. In the alternative to his breach claim, Michael Herman alleges that his retirement agreement is void or voidable because of contract defenses such as fraud, mistake, and repudiation. (ECF No. 61 at 19-20.)

"[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract . . . ." *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 520 (2006) (citing *Third National & Trust Company of Scranton v. Lehigh Valley Coal Company*, 353 Pa. 185 (1945)).[5] But "if a contract is unenforceable in whole or in part . . . unjust enrichment may apply." *Cosby v. Am. Media, Inc.*, 197 F. Supp. 3d 735, 745 (E.D. Pa. 2016) (citing *Fish Net, Inc. v. ProfitCenter Software, Inc.*, No. CIV.A. 09-5466, 2011 WL 1235204, at *10 (E.D. Pa. Mar. 31, 2011)). As Judge Bissoon recently explained, "[t]he practice of alternate pleading means that '[t]he mere existence of a written contract between parties does not bar an unjust enrichment claim.'" *Germain v. Wisniewski*, No. 15-1279, 2016 WL 4158994, at *6 (W.D. Pa. Aug. 5, 2016) (quoting *PPG Industries, Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 526 (W.D. Pa. 2011)). "A plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment in cases where there is a 'question as to the validity of the contract in question.'" *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D.

---

[5] As the Pennsylvania Supreme Court has noted,

> [this] bright-line rule . . . has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity . . . are not entitled to the remedies available under a judicially-imposed quasi[-]contract [i.e., the parties are not entitled to restitution based upon the doctrine of unjust enrichment] because the terms of their agreement (express and implied) define their respective rights, duties, and expectations.

*Skepton*, 586 Pa. at 521 (internal citations omitted).

Pa. 2012) (quoting *AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*, Civ. A. No. 10–6087, 2011 WL 3241356, at \*3 (E.D. Pa. July 29, 2011)); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 622 (D. N.J. 1996) (denying motion to dismiss unjust enrichment claim because "if the written document is unenforceable, the plaintiff may have an unjust enrichment claim."); *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 266 (E.D. Pa. 2007) (noting that "a plaintiff can plead in the alternative and a promissory estoppel claim is a permissible alternative cause of action to a breach of contract claim.").

Michael Herman alleges that Robert Herman and Nicholas Robinson fraudulently induced him into entering into the retirement agreement. Accordingly, a "question as to the validity of the contract" exists. *Premier Payments Online*, 848 F. Supp. 2d at 527. Therefore, Michael Herman permissibly plead quasi-contract claims in the alternative to his breach of contract claim.[6]

### 2.    Michael Herman Alleged a Plausible Unjust Enrichment Claim

"To establish a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege facts demonstrating (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation of such benefit by the defendant, and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit

---

[6] Counterclaim-Defendants claim that the retirement agreement's integration clause prohibits this Court from considering any statements made by NAC employees prior to the retirement agreement's execution. (ECF No. 60 at 15.) This argument would have merit if Michael Herman conceded that the retirement agreement was valid and enforceable. *See, e.g., E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, No. 3:14-CV-00717, 2016 WL 1367176, at \*6 (M.D. Pa. Apr. 5, 2016) (dismissing quasi-contract claims because it was undisputed that "a valid and enforceable written contract exists between the parties . . . ."); *Isobunkers, L.L.C. v. Easton Coach Co.*, No. CIV.A. 09-879, 2010 WL 547518, at \* 4 (E.D. Pa. Feb. 9, 2010) (dismissing quasi-contract claims because the plaintiff "does not deny the existence of a valid contract between the two parties.") But Michael Herman argues (in the alternative) that the retirement agreement is void or voidable. Accordingly, the integration clause does not prevent this Court from considering pre-contractual statements made by NAC employees when evaluating the quasi-contract claims.

without payment to the plaintiff." *iRecycleNow.com v. Starr Indem. & Liab. Co.*, 674 F. App'x 161, 162 (3d Cir. 2017) (citing *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010)). To prevail, "a claimant must show that the party against whom recovery is sought has received a benefit that would be unconscionable for her to retain." *Massachusetts Mut. Life Ins. Co. v. Curley*, 459 F. App'x 101, 108 (3d Cir. 2012) (internal quotation marks omitted) (quoting *EBC*, 618 F.3d at 273).

Michael Herman stated a plausible claim for unjust enrichment. He conferred a benefit on NAC—the decades of service that he provided as the company's president. NAC accepted these benefits. And it might be inequitable for NAC to retain these benefits because, in essence, the monthly payments under the retirement agreement were meant to compensate Michael Herman for his decades of service.[7] Accordingly, he stated a plausible unjust enrichment claim.

### 3. Michael Herman Alleges a Plausible Promissory Estoppel Claim

To maintain a promissory estoppel claim, a plaintiff must show that "(1) the promisor made a promise that he or she could have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; [and] (3) injustice can be avoided only by enforcing the promise." *Geesey v. CitiMortgage, Inc.*, 135 F. Supp. 3d 332, 348-49 (W.D. Pa. 2015) (citing *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003)); *Johnson v. Dunkin' Donuts Franchising L.L.C.*, No. CIV.A. 11-1117, 2012 WL 1828028, at *9 (W.D. Pa. May 18, 2012) (same).

---

[7] Michael Herman states that the monthly payments "were to compensate him for having formed, operated, developed, and built NAC into an influential, dynamic, profitable and well-run organization . . . ." (ECF No. 55 at ¶ 39.)

Michael Herman stated a plausible promissory estoppel claim. Robert Herman and Nicholas Robinson represented that NAC would pay him monthly retirement benefits. This promise induced him to sign the retirement agreement. If the retirement agreement ends up being void, a finder-of-fact could conclude that it would be unjust to allow NAC to avoid its obligation to compensate Michael Herman. Accordingly, Michael Herman has stated a plausible promissory estoppel claim.

### D. Michael Herman Stated Plausible Claims for Actual and Constructive Fraudulent Transfer (Counts VIII and IX) and Conspiracy (Count X)

#### 1. Michael Herman Stated a Plausible Claim for Actual Fraudulent Transfer

Counterclaim-Defendants argue that the Court should dismiss Michael Herman's actual fraudulent transfer claim because he failed to satisfy the heightened pleading standard for fraud imposed by Federal Rule of Civil Procedure 9(b). (ECF No. 60 at 18-19.) Counterclaim-Defendants assert that Michael Herman merely made conclusory allegations of fraudulent conduct which fail to give rise to a plausible fraudulent transfer claim. (*Id.*) In response, Michael Herman contends that he substantiated his claim with sufficient specificity and satisfied the 9(b) standard because he alleged several "badges of fraud." (ECF No. 61 at 23.) The Court agrees.

Under Pennsylvania law, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor . . . ." 12 Pa. C.S. § 5104(a). When determining whether a transferor transferred assets with fraudulent intent, Courts look to numerous factors, including whether:

(1) the transfer or obligation was to an insider;

. . .

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

. . .

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred;

. . .

*Id.* at § 5104(b).

Claims under § 5104(a) must satisfy the heightened pleading requirement imposed by Federal Rule of Civil Procedure 9(b). *See Image Masters, Inc. v. Chase Home Fin.,* 489 B.R. 375, 393 (E.D. Pa. 2013); *In re Rosenblum,* 545 B.R. 846, 864 (Bankr. E.D. Pa. 2016); *Bechtle v. Wister,* No. CIV.A. 13-3798, 2013 WL 6712173, at *3 (E.D. Pa. Dec. 20, 2013). Rule 9(b) states that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

"The purpose of the heightened pleading requirement in 9(b) is to 'place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants from spurious charges of immoral and fraudulent behavior.'" *Grant v. Turner,* 505 F. App'x 107, 111 (3d Cir. 2012) (quoting *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir. 1984)). Conclusory allegations do not suffice. *Grant,* 505 F. App'x at 111.

Michael Herman stated a plausible actual fraudulent transfer claim. Michael Herman's allegations demonstrate three badges of fraud. First, that the assets were transferred to insiders, Robert Herman and Nicholas Robinson, president and CEO of NAC. (ECF No. 55 at ¶ 95.) Second, that NAC received less than reasonably-equivalent value; Michael Herman alleges that, cumulatively, Robert Herman and Nicholas Robinson paid themselves at least $3,600,000 above

15

the market rate between 2014 and 2017. (*Id.* at ¶ 93.) Third, that the transfer occurred shortly after

the transferor incurred a substantial debt—NAC executed the retirement agreement in 2013 and,

according to Michel Herman, Robert Herman and Nicholas Robinson began paying themselves

exorbitant salaries in 2014. (*Id.*) In addition, Robert Herman and Nicholas Robinson "repeatedly

informed" Michael Herman that NAC lacked sufficient funds to make the monthly payments due

under the retirement agreement (*id.* at ¶ 88), which buttresses his assertion that they acted with

intent to defraud him. Accordingly, the Court finds that Michael Herman stated a plausible actual

fraudulent transfer claim.[8]

## 2. Michael Herman Stated a Plausible Claim for Constructive Fraudulent Transfer

Michael Herman also alleges that NAC's payments to Robert Herman and Nicholas

Robinson constituted constructive fraudulent transfers in violation of 12 Pa. C.S. § 5104(a)(2) and

12 Pa. C.S. § 5105. In response, Counterclaim-Defendants argue that Michael Herman failed to

plead the elements of constructive fraudulent transfer with the requisite specificity. (ECF No. 60

at 20-21.)

A constructive fraudulent transfer occurs under § 5104(a)(2) if the debtor transfers assets

"without receiving a reasonably equivalent value" and

> (i) was engaged or was about to engage in a business or a transaction for which
> the remaining assets of the debtor were unreasonably small in relation to the
> business or transaction; or
> (ii) intended to incur, or believed or reasonably should have believed that the
> debtor would incur, debts beyond the debtor's ability to pay as they became due.

§ 5104(a)(2).

---

[8] The only case that Counterclaim-Defendants cite to argue that the Court should dismiss Michael Herman's
fraudulent transfer claim does not apply because it was decided after a bench trial, not at the motion to
dismiss stage. *See In re Valley Bldg. & Const. Corp.*, 435 B.R. 276 (Bankr. E.D. Pa. 2010).

16

A constructive fraudulent transfer occurs under § 5105 if the debt arose before the transfer and "the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ." § 5105(a).

"While the Third Circuit has not decided the issue, 'most Courts in the Circuit recognize that constructive fraudulent transfer claims are not analyzed under the heightened Rule 9(b) pleading standard.'" *Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, No. CV 16-1343, 2016 WL 8256412, at *18 (E.D. Pa. Sept. 16, 2016) (quoting *In re Transcontinental Refrigerated Lines, Inc.*, 438 B.R. 520, 522 (Bankr. M.D. Pa. 2010)).

Michael Herman pleaded a plausible constructive fraudulent transfer claim under both statutes. He states that NAC transferred assets to Robert Herman and Nicholas Robinson without receiving reasonably equivalent value, namely by paying them nearly twice the market rate. He further alleges that as a result of paying these exorbitant salaries, NAC became insolvent because it lacked sufficient funds to honor the retirement agreement that it had recently entered into with him. Accordingly, Michael Herman stated a plausible claim for constructive fraudulent transfer.

### 3. Michael Herman Stated a Plausible Claim for Conspiracy to Commit Fraudulent Transfer

To establish civil conspiracy under Pennsylvania law, a plaintiff must demonstrate:

(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose[;]
(2) an overt act done in pursuance of the common purpose[;] and
(3) actual legal damage.

*City of Greensburg v. Wisneski*, 75 F. Supp. 3d 688, 695 (W.D. Pa. 2015) (Conti, J.) (quoting *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008)). "A civil conspiracy claim requires an underlying tort." *Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr*, 26 F. Supp. 3d 376, 405 (E.D. Pa. 2014) (quoting *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008)).

Michael Herman stated a plausible claim for civil conspiracy. He alleges that Robert Herman and Nicholas Robinson acted in concert to fraudulently convey NAC's assets to themselves, for the common purpose of rendering NAC unable to make his retirement payments. And he alleged two underlying torts which, as discussed above, survive the Counterclaim-Defendants' motion to dismiss—actual and constructive fraudulent transfer. Accordingly, he stated a plausible conspiracy claim.

Counterclaim-Defendants argue that Michael Herman cannot succeed on his conspiracy claim if the Court dismisses his underlying fraud claim. (ECF No. 60 at 22.) The Court rejects this argument. Counterclaim-Defendants apparently fail to recognize that the remaining fraudulent transfer claims could serve as the basis of a conspiracy claim. *See, e.g., E.I Fan Co., L.P. v. Angelo Lighting Co.*, No. 0327 APRIL.TERM 2003, 2003 WL 21990999, at *2 (Pa. Com. Pl. Aug. 18, 2003) (denying motion to dismiss conspiracy to commit fraudulent transfer claim).

Counterclaim-Defendants next argue that Michael Herman fails to state a civil conspiracy claim against Robert Herman and Nicholas Robinson because they merely accepted payments from NAC. (ECF No. 60 at 22.) The Court easily rejects this argument. Michael Herman alleges that Robert Herman and Nicholas Robinson, as president and CEO of NAC, had exclusive authority to determine their own compensation. (ECF No. 55 at ¶ 15.)

Finally, Counterclaim-Defendants argue that a conspiracy claim cannot succeed unless the "sole intent" of the conspiracy was to injury the plaintiff. According to Counterclaim-Defendants, the fact that Robert Herman and Nicholas Robinson received "personal benefits" by enriching themselves necessarily means that the sole intent of their conspiracy could not have been to injure Michael Herman, thus dooming his civil conspiracy claim. (ECF No. 60 at 22.) The Court rejects this argument for several reasons.

First, the case that Counterclaim-Defendants cite to support this contention is inapplicable here, as it was decided at the summary judgment stage. *See Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378 (E.D. Pa. 2009). Second, while the case does state that a civil conspiracy claim requires that the conspiracy's sole purpose was to injure the plaintiff, the very next sentence qualifies this rule by explaining that the sole intent requirement "is negated by a showing that the acts alleged were done for professional or business benefit." *Id.* at 419. Contrary to Counterclaim-Defendants' representations, *Bro-Tech* does not stand for the proposition that a civil conspiracy claim necessarily fails simply because the conspirators received a *personal* benefit; rather, it explains that a conspiracy claim cannot succeed if the conspirators acted with the intent to obtain a legitimate *business* benefit.

Finally, under Counterclaim-Defendants' theory, a plaintiff could almost never succeed on a civil conspiracy claim—the defendants could always allege that they personally benefited from the underlying tort. And this allegation would almost always be true, because a rational person would not commit an intentional tort unless he or she expected to benefit. The Court rejects Counterclaim-Defendants' invitation to insulate co-conspirators from liability for civil conspiracy claims because they benefitted from their own tortious conduct.

E.   **The Court Will Dismiss Michael Herman's Claim Under the California Business and Professions Code (Count XI) Because Pennsylvania Law Applies**

Counterclaim-Defendants argue that the Court should dismiss Michael Herman's claim under the California Business and Professions Code because the retirement agreement's choice of law provision states that Pennsylvania law will govern the contract. (ECF No. 60 at 12.) In addition, Counterclaim-Defendants contend that, even if the Court finds the choice of law provision non-binding, the Court should still apply Pennsylvania law because Pennsylvania has a greater interest. (*Id.*) In response, Michael Herman argues that the choice of law provision does not apply because the claim involves torts—namely fraudulent transfer—outside the scope of the retirement agreement. (ECF No. 61 at 18.) He further asserts that California law should apply because California has a greater interest due to his contacts with California. (*Id.*)

As a preliminary matter, the Court notes that the choice of law provision in the retirement agreement by its own terms only applies to the retirement agreement. (ECF No. 12 at § 1.14.[9]) But Michael Herman's claim under the California Business and Professions Code plausibly concerns matters outside the scope of the retirement agreement, such as Robert Herman's and Nicholas Robinson's alleged fraudulent transfers. Accordingly, the choice of law provision does not apply to these extra-contractual torts. Therefore, the Court will proceed to a choice of law analysis.

1.   **Pennsylvania's Choice of Law Rules Apply**

"[T]he choice of law rules of the forum state, Pennsylvania, apply when a federal court is sitting in diversity." *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010)

---

[9] The Counterclaim-Defendants attached the retirement agreement as an exhibit to their Amended Complaint. (ECF No. 12.)

(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). This Court sits in diversity in the Commonwealth of Pennsylvania. Therefore, Pennsylvania's choice of law rules apply.

### 2. A Conflict Exists Between Pennsylvania Law and California Law

"[T]he first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 404 (3d Cir. 2016) (quoting *Budtel Assocs., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 644 (Pa. Super. Ct. 2006)). "'If [the] two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary.'" *Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)). "If there are no relevant differences between the laws of the two states, the court need not engage in further choice-of-law analysis, and may instead refer to the states' laws interchangeably." *Auto–Owners Ins. Co.*, 835 F.3d at 404.

A conflict exists here. The California Business and Professions Code proscribes a far greater range of conduct than the Pennsylvania Unfair Trade Practices Consumer Protection Law.[10] In fact, Michael Herman clearly cannot state a claim under the Pennsylvania Unfair Trade Practices Consumer Protection Law.[11] Accordingly, a conflict of law exists.

---

[10] The California Business and Professions Code proscribes "*any* unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200 (emphasis added). By contrast, the Pennsylvania Unfair Trade Practices Consumer Protection Law only regulates "purchases or leases [of] goods or services primarily for personal, family or household purposes . . . ." 73 Pa. Stat. Ann. § 201-9.2.

[11] Michael Herman does not allege that he purchased or leased a good or service. Accordingly, Michael Herman does not have a claim under the Pennsylvania Unfair Trade Practices Consumer Protection Law.

### 3. The Conflict Between Pennsylvania Law and California Law is a "True" Conflict

"In the case that a conflict does exist, the court proceeds to the second step of the analysis: characterizing the conflict as 'true,' 'false,' or 'unprovided for.'" *Stanford v. Nat'l Grange Mut. Ins. Co.*, No. CV 11-7144, 2014 WL 12607743, at *1 (E.D. Pa. Feb. 28, 2014) (citing *Hammersmith*, 480 F.3d at 230).

"A 'true' conflict exists where both states have an interest in applying their own law." *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 487 (E.D. Pa. 2009) (citing *Hammersmith*, 480 F.3d at 229). If a "true" conflict exists, the Court must determine "which state has the greater interest in the application of its law" and must apply that state's law. *Cipolla v. Shaposka*, 439 Pa. 563, 566 (1970).

This situation presents a "true" conflict. Pennsylvania has an interest in the Court applying its defendant-protecting rule. Conversely, California has an interest in the Court applying the plaintiff-protecting rule.[12] Accordingly, a true conflict exists. Therefore, the Court must "determine which state has the greater interest in the application of its law." *Hammersmith*, 480 F.3d at 231 (internal citation marks and quotations omitted).

### 4. Pennsylvania's Interest in the Application of Its Law Outweighs California's Interest in the Application of Its Law

As noted above, "[i]f a true conflict exists, the Court must then determine which state has the 'greater interest in the application of its law.'" *Harris v. Kellogg, Brown & Root Servs., Inc.*, 151 F. Supp. 3d 600, 611 (W.D. Pa. 2015) (quoting *Cipolla*, 267 A.2d at 856). "To do so, courts in

---

[12] The Court notes that both parties assume that a true conflict exists. (*See* ECF No. 60 at 11-4; ECF No. 61 at 17-19.)

Pennsylvania apply a hybrid contacts/interest analysis." *Rose v. Dowd*, 265 F. Supp. 3d 525, 530 (E.D. Pa. 2017) (citing *Taylor v. Mooney Aircraft Corp.*, 430 F. Supp. 2d 417, 421 (E.D. Pa. 2006)). The hybrid approach is "a combination of the 'approaches of both [the] Restatement II (contacts establishing significant relationships) and [the] 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy")." *Hammersmith*, 480 F.3d at 231 (quoting *Melville v. Am. Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)). "This analysis requires more than a 'mere counting of contacts'" and requires that the Court "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *Atl. Pier Assocs.*, 647 F. Supp. 2d at 487 (citing *Hammersmith*, 480 F.3d at 231) (internal citations omitted).

The Restatement (Second) of Conflict of Laws ("Restatement") governs the "significant relationships" inquiry. The Court must take into account the following contacts:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

*Id.* at § 145.

The Court concludes that Pennsylvania has a greater interest. While the injury arguably occurred in California (where Michael Herman now resides), the remaining § 145 factors demonstrate that Pennsylvania has more substantial contacts. First, the conduct causing the injury occurred in Pennsylvania. Robert Herman is a resident of Pennsylvania and Texas, *(id.* at ¶ 3) and Nicholas Herman is a New York resident *(id.* at ¶ 2); they ostensibly made the decision to stop paying Michael Herman's retirement payments while working for NAC in Pennsylvania

23

or while in one of the states where they reside. Second, NAC is a Pennsylvania corporation with its principal place of business in Pennsylvania. (ECF No. 55 at ¶ 4.) Third, and most significantly, the parties' relationship centers around Pennsylvania. Michael Herman worked for NAC until 2013. (*Id.* at ¶ 11.) According to Michael Herman, the payments due to him under the retirement agreement "were to compensate him for having formed, operated, developed, and built NAC into an influential, dynamic, profitable and well-run organization . . . ." (*Id.* at ¶ 39.) The Amended Counterclaims are devoid of any allegations that Michael Herman toiled on behalf of NAC while residing in California. The Court can only conclude that the majority of his efforts took place in Pennsylvania, where NAC is headquartered.

In conclusion, the Court finds that Pennsylvania's interests surpass those of California. Accordingly, the Court will apply Pennsylvania law. Therefore, the Court must dismiss Michael Herman's claim under the California Business and Professions Code.

## V.    Conclusion

The Court will grant Counterclaim-Defendants' motion to dismiss Michael Herman's fraud in the inducement, negligent misrepresentation, and fraud claims because these claims are barred by the gist of the action doctrine. The Court will also dismiss Michael Herman's claim under the California Business and Professions Code because Pennsylvania law applies.

The Court will deny Counterclaim-Defendants' motion to dismiss Michael Herman's quantum meruit/unjust enrichment claim and his promissory estoppel claim because alternative pleading is permitted and Michael Herman stated plausible quasi-contract claims. The Court will also deny the motion to dismiss the actual and constructive fraudulent transfer claims, as Michael

24

Herman stated plausible clams. Finally, the Court will deny the motion to dismiss the civil conspiracy claim.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH AMERICAN COMMUNICATIONS, INC., Plaintiff, | ) CIVIL ACTION NO. 3:17-157 |
| v. | ) JUDGE KIM R. GIBSON |
| MICHAEL HERMAN, Defendant and Third-Party Plaintiff | ) |
| v. | ) |
| NORTH AMERICAN COMMUNICATIONS, INC., ROBERT HERMAN and NICHOLAS ROBINSON, Third-Party Defendants. | ) |

## ORDER

AND NOW, this __11th__ day of May, 2018, upon consideration of Counterclaim-Defendants' Motion to Dismiss Amended Counterclaims (ECF No. 59), and in accordance with the attached memorandum opinion, **IT IS HEREBY ORDERED** that the motion is **GRANTED in PART and DENIED in PART as follows:**

1. The motion is **GRANTED** with respect to the fraud in the inducement claim (Count IV), the negligent misrepresentation claim (Count V), the fraud claims (Counts VI and VII), and the claim under the California Business and Professions Code (Count XI).

2. The motion is **DENIED** with respect to the remaining claims.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE