IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTH AMERICAN COMMUNICATIONS, INC., | : : | No. 3:17-cv-157 |
| Plaintiff, | : | |
| v. | : : | |
| MICHAEL HERMAN, | : | |
| Defendant and Counterclaim-Plaintiff | : : : | |
| v. | : : | |
| NORTH AMERICAN COMMUNICATIONS, INC., ROBERT HERMAN and NICHOLAS ROBINSON | : : : : | |
| Counterclaim-Defendants. | : : | |

**MOTION FOR PROTECTIVE ORDER TO PREVENT OR LIMIT THE DEPOSITION OF MARIA HERMAN FILED ON BEHALF OF MARIA AND MICHAEL HERMAN[1]**

Maria Herman, who has been subpoenaed for a deposition as a third-party witness and her husband, Defendant/Counterclaim-Plaintiff Michael Herman, pursuant to Federal Rules of Civil Procedure 26 and 45, file the following Motion for Protective Order to Prevent or Limit the Deposition of Maria Herman ("Motion for Protective Order" or "Motion"). Mrs. and Mr. Herman seek a protective order because – in light of facts that Mr. Herman has already admitted and does not dispute – the deposition of Mrs. Herman is unnecessary, unreasonably cumulative, violates Rule 26's principles of proportionality and will result in the occurrence of unnecessary and undue expenses. Rather than serve to develop information relevant to the claims and

---

[1] Undersigned counsel certifies pursuant to Rule 26(c)(1) that he made a good faith attempt to meet and confer and met and conferred with opposing counsel concerning the subject of this Motion but the Parties were not able to agree on a resolution.

defenses at issue in this case, the deposition of Mrs. Herman will serve only to tread into irrelevant areas unrelated to the alleged improper competition at issue in this case and potentially invade the spousal privilege.

### I.   The Allegations in the Second Amended Complaint and the Factual Record Concerning Mr. Herman's Positions Regarding Them

By an Order dated March 4, 2019, the Court permitted Plaintiff North American Communications, Inc. ("NAC") to file a Second Amended Complaint to assert allegations regarding Mr. Herman's involvement with IBS. Doc. 80. In conjunction with permitting the filing of an amended complaint, the Court permitted a short window for discovery on the subjects added in the Second Amended Complaint, with discovery closing on May 28, 2019. Doc. 80.

NAC filed its Second Amended Complaint on March 19, 2019. Doc. 81. In it, NAC asserts that Mr. Herman has violated the non-competition provisions of his Retirement Agreement though his involvement with IFM, IBS and Logan Marketing. Doc. 81, ¶¶ 26-43. This improper competition is alleged to include Mr. Herman's wife, Maria Herman, being an owner in Logan Marketing. *Id.,* ¶38.

Unlike many "non-compete" cases, Mr. Herman does not deny that he has involvement with the entities discussed in the Second Amended Complaint, namely IFM, IBS and Logan Marketing. Rather, his legal positions and defenses are, *inter alia*, that (i) these entities do not actually compete with NAC, (ii) NAC has suffered no cognizable damages from any claimed competition and (iii) any competition is not a violation of the Retirement Agreement because NAC breached the Retirement Agreement first by stopping payments to Mr. Herman under the Retirement Agreement in 2014 – two years **before** any alleged competition and while Robert Herman and Nicholas Robinson continued to pay themselves seven-figure compensation. *See*

*e.g., U.S. ex rel. Greenmoor, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 06-cv-0234, 2009 WL 4730233, at *49 (W.D.Pa. Dec. 4, 2009) (a party cannot prevail on a breach of contract claim unless it has performed all of its obligations under the contract).

Consistent with the fact that Mr. Herman does not deny having a role with the entities at issue, in discovery responses issued in ***June 2018*** he admitted his involvment and role with IFM, stating:

> Mr. Herman, in a consultative role, has provided advice and services regarding the management and operations of IFM and has done so since its founding, although he does not control or manage the daily operations of IFM and it is his understanding that to date IFM has not engaged in any revenue producing business that is competitive with NAC. In further answer, Mr. Herman loaned $15,000 to IFM in or about May 2017 and helped arrange for funding for IFM to purchase equipment from Fry Communications in or about January 2017 as well as funding for other capital needs. Mr. Herman is willing to discuss a stipulation to the above facts in order to efficiently limit the need for burdensome and costly discovery in this matter. More detailed information can properly be addressed in depositions. Mr. Herman reserves the right to update this Answer.

*See* Exhibit 1 hereto. Mr. Herman's involvement and role were further discussed and admitted in both Mr. Herman's deposition and the deposition of Manny Ortiz, the individual who runs the day-to-day operations of the entities at issue, when each was deposed in November 2018. *See* Exhibit 2 (excerpts of M. Herman Depo.) and Exhibit 3 (excerpts of M. Ortiz Depo).

In addition to information related to IFM, Mr. Herman's deposition testimony included testimony regarding both an investment in Logan Marketing to purchase the shares owned by his wife via a loan he took out against an airplane and the fact that his wife, Maria Herman, owns 24.5 percent of Logan Marketing. Ex. 2, pp. 68-69. The fact of Maria Herman's ownership was also disclosed in a subpoena response filed by Logan Marketing in the ***summer of 2018***. *See* Exhibit 4. These facts have not been obscured and they are not disputed.

Similarly, in answering NAC's Second Amended Complaint, Mr. Herman admitted his role and involvement with Logan Marketing and IBS. In paragraph 26 of his Answer, Mr.

Herman stated:

> With regard to IBS Direct ("IBS") and Logan Marketing Group, LLC ("Logan"), Mr. Herman similarly, in a consultative role, has provided advice and services regarding the management and operations of IBS and Logan and he has done so since in or around the date Logan purchased IBS, although he does not control or manage the daily operations of IBS or Logan; he also helped in securing funding for the purchase of IBS by Logan and his wife is an owner of Logan.

Doc. 82, ¶26. Similar to the testimony related to IFM, Mr. Herman's role and involvement with Logan Marketing and IBS was the subject of questioning at a second deposition of Mr. Ortiz taken on May 8, 2019, as well as the depositions of Stephanie Ortiz and Michael R. Herman (Mr. Herman's son) that were taken that same day.[2] Mr. Herman is scheduled to be deposed a second time on May 20, 2019 and, consistent with the statements in his Answer, will testify under oath as to his role and involvement with Logan Marketing and IBS. The above depositions taken on March 8, 2019 also established that Maria Herman has no role in the day-to-day operations of any of the businesses at issue.[3]

As all of the above record evidence demonstrates, Mr. Herman's role and involvement with the entities in question are not disputed and have been admitted. The same is true for the fact that Maria Herman, although not having involvement in the day-to-day operations of Logan Marketing or IBS, owns 25.4 percent of Logan Marketing.

Because this evidence is not disputed and has been admitted, there simply is no legitimate need to depose Mrs. Herman.

---

[2] The transcripts from these depositions are not yet available, but counsel will gladly provide relevant excerpts to the Court once they are available.

[3] Mrs. Herman receives a small salary from Logan Marketing so that she can qualify for health care benefits.

4

## II. The Deposition of Mrs. Herman is Unnecessary, Would Be Cumulative, Out of Proportion to the Needs of the Case and Would Result in Undue Expense

With the above record facts not in dispute and already established – including by Mr. Herman's own admissions – the deposition of Mrs. Herman is completely unnecessary, would do nothing but duplicate the already admitted facts and, accordingly, would violate Rule 26's principles of proportionality and result in undue and unnecessary expense. Accordingly, a protective order precluding the deposition should be entered.

### A. Applicable Law

1. <u>Rule 26(b) and Its Limitations</u>

Generally, materials that are relevant to an issue in a case are discoverable unless they are privileged or violate Rule 26's proportionality standard. Rule 26(b)(1) provides:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.Proc. 26(b)(1). Thus, while the scope of discovery under the Federal Rules is broad, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

In that regard, under Rule 26(b), even relevant discovery may be limited by a court if "the discovery sought ***is unreasonably cumulative or duplicative***, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.Proc. 26(b)(2)(C)(i) (emphasis added). "In evaluating whether a party is entitled to discovery, the trial court should not simply rule on some categorical imperative, but should consider all the

circumstances of the pending action." *Trask v. Olin Corp.*, 298 F.R.D. 244, 258 (W.D. Pa. 2014).

    2.  <u>Protective Orders Under Rule 26(c)</u>

In addition to the limitations under Rule 26(b), the Court is empowered to enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or **undue burden or expense**[.]" Fed.R.Civ.Proc. 26(c)(1) (emphasis added). The party moving for a protective order has the burden of demonstrating "good cause" for the order. *See generally, Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir.1994). In evaluating good cause, to the extent applicable, the Court should examine, among other factors, the seven factors set forth by the Third Circuit in *Pansy* and its progeny.[4]

Similar to Rule 26(c), Rule 45(d)(3)(A)(iv) permits a Court to quash or modify a subpoena that "subjects a person to undue burden" and Rule 45(d)(3)(A)(iii) permits a Court to quash or modify a subpoena that calls for "disclosure of privileged" information. Fed.R.Civ.Proc. 45(d).

    **B.  The Proposed Deposition of Mrs. Herman Should be Precluded Under Rule 26(b)(2)(C)(i) and (c) and Rule 45(d)(3)(A)(iii) and (iv)**

Rule 26 limits discoverable information to that which is relevant to the parties' claims and defenses. *See* Fed.R.Civ.Proc. 26(b). Given the allegations in the Second Amended Complaint, the only relevant testimony that could be elicited from Mrs. Herman would concern

---

[4]  The *Pansy* factors are whether disclosure will violate any privacy interests; whether the information is being sought for a legitimate purpose or for an improper purpose; whether disclosure of the information will cause a party embarrassment; whether confidentiality is being sought over information important to public health and safety; whether the sharing of information among litigants will promote fairness and efficiency; whether a party benefitting from the order of confidentiality is a public entity or official; and whether the case involves issues important to the public.

(i) her ownership interest in Logan Marketing, (ii) her husband's role in the businesses at issue, and (iii) any investment made in or money received by her or her husband from the businesses at issue in the litigation. ***But, the existing record already establishes all of that information, which includes Mr. Herman's own admissions***.

Additionally, any communications between Mr. and Mrs. Herman, even on these arguably relevant topics, are protected from discovery by the spousal communications privilege and any testimony adverse to Mr. Herman is prohibited by the adverse testimony spousal privilege. 42 Pa.C.S.A. §§ 5923, 5924. *See Carroll v. Student Transportation, Inc.*, No. 10-cv-1439, 2011 WL382563, at *2-4 (discussing contours of spousal privileges under Pennsylvania law). Because this is a diversity case where Pennsylvania law controls, Pennsylvania law on privilege applies. *Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978).[5]

Given the above, what we are talking about here is a deposition of limited scope about factual subjects that have already been admitted to by Mr. Herman and that will be chocked full of privilege issues. Given that the relevant, factual topics that could be covered in a deposition of Mrs. Herman are not in dispute, the time and cost of such a deposition is undue and out of proportion to the needs of the case. It is clearly cumulative. It is unnecessary. Under these circumstances, the deposition of Mrs. Herman should be barred. *E.g., Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (granting motion for protective order because party stipulated to admissibility of other evidence on the subject matter at issue); *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 853-54 (10th Cir. 1996) (affirming entry of protective order prohibiting depositions

---

[5] While the holding in *Carroll* was that a deposition subpoena would not be quashed, but rather objections based on spousal privileges could be asserted at the deposition, *Carroll* did not involve the other issues present here such as the cumulative nature of the discovery, the impact of the privilege issues on the Court's proportionality analysis, or the undisputed record regarding Mr. Herman's role with the entities.

of subordinate employees because supervisory employees had already been deposed on the topic); *Rogers v. U.S. Navy*, 223 F.R.D. 533, 535 (S.D.Cal. 2004) (denying discovery pursuant to Rule 26(b) because "the scope of information sought by the plaintiff was 'overkill'"); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 517-18 (N.D.Okl. 2003) (denying motion to compel because, based on opposing party's stipulation, the discovery at issue was not relevant).

Accordingly, the Court should grant this Motion for Protective Order pursuant to (i) the proportionality standard in Rule 26(b)(1), (ii) the limitations set forth in Rule 26(b)(2)(C)(1), and (iii) Rule 26(c)(1) and Rule 45(d)(3)(iii) and (iv).[6] At a minimum, limitations should be placed on the scope of the deposition, with NAC being precluded from asking (i) questions that call for information protected by the spousal communications and the adverse testimony spousal privileges and (ii) questions that do not concern the alleged improper competition pled in the Second Amended Complaint, such as questions regarding the personal finances of Mrs. and Mr. Herman that do not relate to the alleged improper competition.

WHEREFORE, Maria and Michael Herman respectfully request that this Court grant their Motion for Protective Order and enter the attached proposed Order.

Dated: May 8, 2019                                     Respectfully submitted,

                                                       s/ David J. Berardinelli

---

[6] As to Rule 26(c)(1), several of the *Pansy* factors are not applicable here, but, of the applicable *Pansy* factors, the following factors all weigh in favor of granting a protective order: the deposition has the potential to impact privacy interests protected by the spousal privileges; with any "relevant" information already in the record and admitted to by Mr. Herman, the deposition can be viewed as sought for an improper purpose (*i.e.*, to harass Mr. Herman); the fact that the relevant information has already been admitted by Mr. Herman promotes the sharing of information among litigants; Mrs. and Mr. Herman are private individuals; and the case involves only private issues and disputes. *See Lopez v. CSX Transportation, Inc.*, No. 3:14-cv-257, 2015 WL 3756343 (W.D.Pa. 2015) (despite legitimate basis for depositions, depositions were found to be sought for an improper purpose).

                David J. Berardinelli (PA ID #79204)
                DeForest Koscelnik Yokitis & Berardinelli
                3000 Koppers Building
                Pittsburgh, PA l5219
                *Counsel for Maria Herman*
                 *and Michael Herman*